## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mark Wakeman,

                Petitioner,

v.

Aqua2 Acquisition, Inc. d/b/a
AutoQual USA,

                Respondent.

**MEMORANDUM OF LAW &
ORDER**
Civil File No. 10-4538 (MJD/JJK)

W. Michael Garner, W. Michael Garner, P.A., Counsel for Petitioner.

Jason J. Stover and Robert L. Zisk, Gray, Plant, Mooty, Mooty, & Bennet, PA,
Counsel for Respondent.

## I.    INTRODUCTION

This matter is before the Court on Petitioner's Motion to Vacate

Arbitration Award [Docket No. 2], and Respondent's Motion to Confirm and/or

Modify Arbitration Award [Docket No. 8].  Oral Argument was heard Friday

January 21, 2011.

## II.    SUMMARY OF THE COURT'S OPINION

After considering the documents filed and the oral arguments, the Court will grant Respondent Aqua2 Acquisition, Inc.'s Motion to Confirm and/or Modify Arbitration Award, and will deny Petitioner Mark Wakeman's Motion to Vacate Arbitration Award.  The Court finds that the arbitrator acted within his authority in clarifying his original award, and thus the Court will confirm the November 2, 2010 award of the arbitrator, as clarified by his November 11, 2010 order.

## III.   FACTUAL BACKGROUND

### A. Parties

Respondent Aqua2 Acquisition, Inc. d/b/a AutoQual USA ("AutoQual") is a franchisor of a system whose franchisees provide vehicle interior reconditioning and maintenance services to automobile dealerships.  AutoQual franchisees clean and recondition the interior of vehicles on dealership lots and continue their services until a particular vehicle is sold.

Petitioner Mark Wakeman ("Wakeman") was an AutoQual franchisee, who signed a Franchise Agreement ("Agreement") with AutoQual in 2005. Wakeman operated his franchise through the corporation Auto Dealership Solution, Inc. ("Auto Dealership Solutions"), which was not a party to the

arbitration.  Wakeman terminated his relationship with AutoQual in October 2009, and AutoQual terminated the franchise relationship in November 2009.

### B.  Franchise Agreement

As part of the Agreement, AutoQual instructed Wakeman how to successfully operate an automobile reconditioning business.  Further, as part of the Agreement, Wakeman purchased a franchise location in Rochester, New York.  The Agreement contained a post-termination covenant not to compete. The provision states:

> Upon termination or expiration of this Agreement for any reason, you and your officers, directors, shareholders, and/or partners agree that, for a period of 2 years commencing on the effective date of termination or expiration, or the date on which you cease to conduct business, whichever is later, neither you, any Manager, nor your officers, directors, shareholders, managers, members and/or partners will have any direct or indirect interest (through any of your, or your owners [sic] immediate family members) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business, as defined above, located or operated within a 50-mile radius of your Territory or within a 50-mile radius of the territory of any other franchised or company-owned business.

(Garner Decl. in Support of Motion to Vacate Arbitration Award, Ex. 1 § 17.2)

The Agreement describes Competitive Business as follows:

> The term "Competitive Business" as used in this Agreement will mean any business offering, or granting franchises or licenses to

others to offer, Interior Reconditioning Services or any other
products or services offered by Businesses, or any product or service
offered to Customers or to sellers of vehicle rental businesses,
including windshield repair or replacement services.

(Id. § 17.1.3.)

The Agreement also contained an arbitration clause which states:

All disputes and claims relating to this Agreement or any other
agreement entered into between the parties, the rights and
obligations of the parties, or any other claims or causes of action
relating to the making, interpretation, or performance of either party
under this Agreement shall be settled by arbitration…in accordance
with the Federal Arbitration Act and Commercial Arbitration Rules
of the American Arbitration Association.

(Id. § 21.1.)

## C. Arbitration Proceeding

Following termination of the franchise relationship, Wakeman continued

in the same business through Auto Dealership Solutions.  AutoQual commenced

an arbitration proceeding pursuant to Article 21.1 of the Agreement, seeking

injunctive relief requiring Wakeman to comply with the post-termination

covenant not to compete.

On November 2, 2010 the arbitrator issued an award which stated that:

Respondent Mark Wakeman is enjoined for a period of two years
commencing on November 10, 2009 from offering or selling any
INTERIOR RECONDITIONING SERVICES in the Territory

4

> identified on Exhibit A to the Franchise Agreement executed
> between Automotive Franchise Systems, LLC and its successor
> AutoQual USA and Mark Wakeman on March 24, 2005.  The
> remaining claims of both parties are denied.

(Garner Decl. in Support of Motion to Vacate Arbitration Award Ex. 2)  In the

award's attached memorandum, the arbitrator stated that the non-compete

provision of the Agreement was enforceable because, other than for some slight

alterations, "the time and geographic restrictions" of the clause "are reasonable"

and the "non-compete clause does serve a legitimate business purpose of

AutoQual."  (Id.)

After the issuance of this award, AutoQual's counsel contacted

Wakeman's counsel to discuss Wakeman's compliance with the injunction.

Wakeman's counsel stated that he believed Wakeman could sell his business and

continue to work in exterior reconditioning services as long as he, himself, did

not offer or sell interior reconditioning services for the specified period of time.

Once AutoQual was informed of Wakeman's interpretation of the

arbitrator's award, AutoQual filed a letter request that the arbitrator make it

clear that the initial award prohibited the sale of Wakeman's business to his

sister.  The letter proposed that the language of the arbitration award should

mirror the language of the covenant not to compete in the Agreement.  On

November 8, 2010 Wakeman responded by letter to AutoQual's request.  In this letter, Wakeman argued that the arbitrator was not allowed to amend the award as requested by AutoQual, because Rule 46 of the Commercial Arbitration Rules ("Rule 46") of the American Arbitration Association ("AAA") only allows for an arbitrator "to correct any clerical, typographical, or computational errors in the award.  The arbitrator is no empowered to redetermine the merits of any claim already decided."

On November 11, 2010 the arbitrator issued a clarification of his award. The arbitrator did not treat AutoQual's request as a motion to amend the original award, but rather as a motion to modify the award pursuant to AAA Rule 46. The November 11, 2010 order stated that the original arbitration award was meant to enforce the language of the non-compete clause found in the Agreement.  In the November 11 order, the arbitrator stated that "[t]o the extent it was not clear, the Arbitration Award was intended to enforce the provisions of paragraph 17.2 except for the starting time of the injunction and the territorial restriction, as specifically noted in the award."  (Stover Decl. Ex. D) Furthermore, the arbitrator stated that:

> Respondent Mark Wakeman, including any manager, officers,
> directors, shareholders, managers, members and/or partners,

beneficial owners, investors, partners, employees, consultants, representative or agents including immediate family members are enjoined for a period of two years commencing on November 10, 2009 from offering or selling any Interior Re-conditioning Services or operating a Competitive Business in the Territory identified on Exhibit A to the Franchise Agreement as further defined in the Franchise Agreement between Automotive Franchise Systems, LLC and it successor AutoQual USA and Mark Wakeman on March 24, 2005.

(<u>Id.</u>)

### D. Procedural History

On November 12, 2010 Wakeman filed a petition with this Court to vacate the modified award issued November 11, 2010.  [Docket No. 1]  On December 1, 2010, Wakeman filed a Motion to Vacate Arbitration Award Pursuant to the Federal Arbitration Act, 9 U.S.C. § 10(a)(4).  [Docket No. 2]  AutoQual responded to Wakeman's petition to vacate on December 1, 2010 and brought a cross-petition to confirm and/or modify the arbitrator's award set forth in the November 2 and November 11 orders.  [Docket No. 6]  AutoQual also brought a Motion to Confirm and/or Modify Arbitration Award.  [Docket No. 9]  In their submissions and at oral argument, AutoQual agreed to stipulate that the November 2 award is limited only to interior reconditioning services.

## IV.   DISCUSSION

### A.  Standard of Review for Confirming/Vacating an Arbitration Award

A court's review of an arbitrator's final decision is extremely narrow.

Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 746 (8th

Cir. 2000).  "[A]s long as the arbitrator is even arguably construing or applying

the contract and acting within the scope of his authority, that a court is convinced

he committed serious error does not suffice to overturn his decision."  Id. at 746-

47 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29 (1987)).

However, the Federal Arbitration Act ("FAA") states that a court may

vacate an arbitration award in certain situations.  In particular, 9 U.S.C. § 10(a)(4)

states that:

> the United States court in and for the district wherein the award was
> made may make an order vacating the award upon the application
> of any party to the arbitration where the arbitrators exceeded their
> powers, or so imperfectly executed them that a mutual, final, and
> definite award upon the subject matter submitted was not made.

"The scope of an arbitrator's authority is defined by the agreement

providing for the arbitration."  Prime Therapeutics LLC v. Omnicare, Inc., 555 F.

Supp. 2d 993, 999 (D. Minn. 2008) (citing E.E.O.C. v. Waffle House, Inc., 534 U.S.

279, 289 (2002).   In this case, the parties agreed that all disputes were to be

settled by arbitration "in accordance with the Federal Arbitration Act and the

Commercial Arbitration Rules of the American Arbitration Association."

(Garner Decl. in Support of Motion to Vacate Arbitration Award, Ex. 1 § 21.1)

Accordingly, AAA Rule 46 applied to the arbitration proceedings.  AAA Rule 46

states:

> Within 20 days after the transmittal of an award, any party, upon
> notice to the other parties, may request the arbitrator, through the
> AAA, to correct any clerical, typographical, or computational errors
> in the award.  The arbitrator is not empowered to redetermine the
> merits of any claim already decided.  The other parties shall be given
> 10 days to respond to the request.  The arbitrator shall dispose of the
> request within 20 days after transmittal by the AAA to the arbitrator
> of the request and any response thereto.

(Id. Ex. 6).  AAA Rule 46 "essentially codifies the common law doctrine of *functus*

*officio*, which forbids an arbitrator to redetermine an issue which he has already

determined."  Bosack v. Soward, 586 F.3d 1096, 1103 (9th Cir. 2009) (citation

omitted).

## B. AutoQual's  Motion to Confirm the Arbitration Award & Wakeman's Motion to Vacate the Arbitration Award

### 1.   Common Law Doctrine of Functus Officio and AAA Rule 46

Neither this Court nor the Eight Circuit has previously considered the

applicability of AAA Rule 46.  However, the Eight Circuit has had opportunity to

consider the *functus officio* doctrine.  Other courts have used this doctrine to

examine whether an arbitrator's actions exceeded his authority pursuant to the

AAA rules.  Eastern Seaboard Const. Co., Inc. v. Gray Const., Inc., 553 F.3d 1, 4-5

(1st Cir. 2008) (using the *functus officio* doctrine to examine the applicability of

AAA Rule 47, a predecessor to AAA Rule 46).  Furthermore, other courts have

found that AAA Rule 46 "essentially codifies the common law doctrine of *functus*

*officio*, which forbids an arbitrator to redetermine an issue which he has already

determined." Bosack, 586 F.3d at 1103 (citation omitted); Louisiana Health

Service Indemnity Co. v. Gambro, No. 05-1450, 2010 WL 5256805 at *5 (W.D. La.

Dec. 21, 2010) (citation omitted).

"The doctrine of *functus officio* prevents arbitrators from revisiting a final

award after the final award has been issued." Legion, 197 F.3d at 719 (8th Cir.

1999).  The Eighth Circuit has recognized exceptions to this doctrine where a

mistake is evident on the face of the award as well as when the parties consent,

thus allowing an arbitrator to clarify his award.  See Id. at 720 (citing Local P-9,

United Food & Commercial Workers Int'l Union v. George A. Hormel & Co., 776

F.2d 1393, 1394 (8th Cir. 1985)).   Other circuits have noted that the doctrine is

"riddled by exceptions" and "is hanging on by its fingernails…" Glass, Molders,

Pottery, Plastics, & Allied Workers Int'l Union v. Excelsior Foundry Co., 56 F.3d

844, 846 (7th Cir. 1995).  The exceptions which other courts have applied to this

doctrine include correcting a mistake on the face of the award, adjudicating an

issue which was submitted to the arbitrator but not decided in the award, and to

clarify an ambiguity in the award. <u>Sterling China Co. Glass, Molders, Pottery,</u>

<u>Plastics & Allied Workers Int'l Union Local No. 24</u>, 357 F.3d 546, 554 (6th Cir.

2004).   The First Circuit, applying the doctrine of *functus officio* to assess the

applicability of AAA Rule 47, found that, pursuant to AAA Rule 47, an arbitrator

was allowed to clarify his original award, where such an action "clarified a latent

ambiguity."  <u>Eastern Seaboard</u>, 553 F.3d at 6.  However, courts do "tend to

differentiate between a second award which is fundamentally inconsistent with

the first award and one which simply flesh[es] out the remedy announced

initially."  <u>Id.</u> at 4.

        The arbitrator's November 11 clarification falls within these exceptions.

The clarification is best understood as clarifying an ambiguity which became

apparent when Wakeman informed AutoQual of its interpretation of the original

award.  The parties' differing interpretations of the scope of the November 2

award serves as evidence that such an ambiguity existed.  <u>See</u> <u>Local 2322, Int'l</u>

<u>Bhd. of Elec. Worker v. Verizon, Inc.</u>, No. Civ. A. 04-12490-RWZ, 2005 WL

3160696, at * 3 (D. Mass Nov. 23, 2005) (finding that when a court is determining

whether an arbitrator's award is ambiguous, the parties' differing opinions are

"telling").  The November 11 order does not seek to reexamine the merits of the

controversy.  The merits of the controversy were whether the non-compete

clause in the Agreement was enforceable.  The arbitrator in his memorandum,

which was attached to and made part of the November 2 award, stated that the

non-compete provision of the Agreement was enforceable because, except as

noted in the award, "the time and geographic restrictions" of the clause were

"reasonable" and the "non-compete clause does serve a legitimate business

purpose of AutoQual."  Thus, the arbitrator explained that, except as specifically

detailed in the award, the non-compete clause was enforceable.  Although the

order only references Wakeman individually, the memorandum expresses the

arbitrator's intent to enforce the provisions of the non-compete clause as

expressed in the Agreement, which created an ambiguity as to the scope of the

injunction.  Contrary to Wakeman's argument that the two awards are

inconsistent, the Court sees the November 11 order as simply fleshing out the

initial award.  <u>Eastern Seaboard</u>, 553 F.3d at 4.  In the November 11 order, the

arbitrator simply clarified that the original award was meant to enforce the terms of the Agreement.

As the Seventh Circuit articulated in <u>Excelsior Foundry</u>, "[a]rbitrators are not more infallible than judges.  They make mistakes and overlook contingencies and leave much to implication and assumption."  56 F.3d at 847.  The court goes on to state that "an award that fails to address a contingency that has arisen after the award was made is incomplete; alternatively it is unclear; either way, it is within an exception to" the doctrine of *functus officio*.  <u>Id.</u>  In the case at hand a contingency arose after the arbitrator issued his original award.  The arbitrator thought his November 2 clearly enforced the terms of the non-compete clause found in the Agreement, but Wakeman interpreted the original award to enjoin only himself, allowing him to transfer his corporation to a straw man.  Although the arbitrator believed the November 2 award to be complete, the award overlooked this contingency, which is the type of failure that an arbitrator has the authority to remedy pursuant to AAA Rule 46.  <u>Eastern Seaboard</u>, 553 F.3d at 5.  Once the arbitrator was informed of Wakeman's interpretation of the November 2 award, he issued the November 11 order to clarify what he intended in his original award.

Contrary to Wakeman's argument that the November 11 order amended the November 2 award, the arbitrator treated AutoQual's letter as a motion for modification pursuant to Rule 46. The November 11 order did not change the original award, but rather clarified the intent of the arbitrator's original award. As the arbitrator stated, "[t]o the extent it was not clear the Arbitration Award was intended to enforce the provisions of paragraph 17.2 except for the starting time of the injunction and the territorial restriction, as specifically noted in the award." The November 11 order only sought to clarify the scope of the original award, given Wakeman's stated intention to sell his business to his sister. Therefore, the arbitrator did not exceed his authority.

Accordingly, the Court will grant AutoQual's motion to confirm the November 2, 2010 award, as clarified by the November 11, 2010 order. The scope of the injunction however, as stipulated by AutoQual, extends only to interior reconditioning services, as that phrase is defined in the Agreement. Consequently, because the Court will grant AutoQual's Motion to Confirm, the Court will deny Wakeman's Motion to Vacate the November 11 order.

## 2. Time Period of Injunction

AutoQual argues that the real reason Wakeman is requesting that the

second order be vacated is to shorten the time period of the injunction.  The

arbitrator in his original award stated that the injunction was to last for one year

and eight days from the date of that award.  AutoQual requests that this Court

enjoin Wakeman from competing with AutoQual for one year and eight days

from the date of this Court's order, so that AutoQual gets the full relief it was

granted by the arbitrator.  Michigan law, which applies to the Agreement, states

that a covenant not to compete may be extended beyond the stated termination

date in appropriate circumstances.   Thermatool Corp. v. Borzym, 575 N.W.2d

334, 338 (Mich. Ct. App. 1998).

> [A] trial court may extend a covenant not to compete beyond its
> stated expiration date as an appropriate remedy for a breach of the
> agreement only in cases where: 1) the breaching party flouted the
> terms of the covenant not to compete; 2) the breach consisted of
> continuous and systematic activity, as opposed to an isolated
> transaction; and 3) it is not possible to determine monetary damages
> with any degree of certainty.

Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., No.

07-10341, 2008 WL 2218427 at *10 (E.D. Mich. May 27, 2008).

From the evidence before this Court, it is not clear that Wakeman

flouted the terms of the covenant not to compete because it was unclear

what exactly Wakeman was enjoined from doing.  Accordingly, the Court

will not extend the injunction beyond the time period specified in the

arbitrator's award.

## V.      CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Petitioner Make Wakeman's Motion to Vacate Pursuant to 9 U.S.C. §
        10 [Docket No. 2] is **DENIED.**

2.      Respondent Aqua2 Acquisition, Inc.'s Motion to Confirm the
        Arbitration Award [Docket No. 8] is **GRANTED,** and the
        November 2 Award is confirmed, as clarified by the
        arbitrator's November 11 order, except that those individuals
        enjoined by the November 11 order are only enjoined from
        engaging in interior reconditioning services, as that phrase is
        defined in the Franchise Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  February 14, 2011                          s/ Michael J. Davis
                                                  Michael J. Davis
                                                  Chief Judge
                                                  United States District Court