UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mark Wakeman,

    Petitioner,

v.

Aqua2 Acquisition, Inc. d/b/a
AutoQual USA,

    Respondent.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-4538 (MJD/JJK)

---

W. Michael Garner, W. Michael Garner, P.A., Counsel for Petitioner.

Jason J. Stover and Robert L. Zisk, Gray, Plant, Mooty, Mooty, & Bennet, PA, Counsel for Respondent.

---

## I. INTRODUCTION

This matter is before the Court on Petitioner's Motion for an Immediate Stay of this Court's February 14, 2011 Judgment. [Docket No. 34] Petitioner requests a stay of the Court's judgment and seeks to have this Court suspend its injunction pending appeal of this Court's February 14, 2011 Order to the Eighth Circuit.

## II. FACTUAL BACKGROUND

The Court previously set forth the factual background in its February 14, 2011 Order [Docket No. 31]. Accordingly, the Court will not describe facts in detail. In brief, Respondent Aqua2 Acquisition, Inc. d/b/a AutoQual USA ("AutoQual") is a franchisor of a system whose franchisees provide vehicle interior reconditioning and maintenance services to automobile dealership. Petitioner Mark Wakeman ("Wakeman") was an AutoQual franchisee, who signed a Franchise Agreement ("Agreement") with AutoQual in 2005. After the franchise relationship was terminated, AutoQual commenced an arbitration proceeding seeking injunctive relief requiring Wakeman to comply with the post-termination covenant not to compete found in the Agreement. On November 2, 2010 the arbitrator issued an award which stated that:

> Respondent Mark Wakeman is enjoined for a period of two years commencing on November 10, 2009 from offering or selling any INTERIOR RECONDITIONING SERVICES in the Territory identified on Exhibit A to the Franchise Agreement executed between Automotive Franchise Systems, LLC and its successor AutoQual USA and Mark Wakeman on March 24, 2005. The remaining claims of both parties are denied.

(Garner Decl. in Support of Motion to Vacate Arbitration Award Ex. 2.)

After the issuance of this award, AutoQual filed a letter request that the arbitrator make it clear that the initial award enjoined not only Wakeman, but

the other individuals discussed in the non-compete clause. On November 11, 2010 the arbitrator issued a clarification of his award. In the November 11 order, the arbitrator stated that:

> Respondent Mark Wakeman, including any manager, officers, directors, shareholders, managers, members and/or partners, beneficial owners, investors, partners, employees, consultants, representative or agents including immediate family members are enjoined for a period of two years commencing on November 10, 2009 from offering or selling any Interior Re-conditioning Services or operating a Competitive Business in the Territory identified on Exhibit A to the Franchise Agreement as further defined in the Franchise Agreement between Automotive Franchise Systems, LLC and it successor AutoQual USA and Mark Wakeman on March 24, 2005.

(Stover Decl. Ex D.)

### A. February 14, 2011 Order Confirming Arbitrator's Award

On February 14, 2011, this Court issued an Order [Docket No. 31] which confirmed the arbitrator's award, as clarified by the arbitrator's November 11, 2010 order. Pursuant to the Court's February 14, 2011 Order, Petitioner Wakeman is enjoined in the manner described in the arbitrator's November 11 Order. Specifically this Court's Order enjoined, Mark Wakeman, including any manager, officers, directors, shareholders, managers, members and/or partners, beneficial owners, investors, partners, employees, consultants, representative or

agents including immediate family members for a period of two years commencing on November 10, 2009 from offering or selling any Interior Re-conditioning Services. (February 14 Order 7, 16.)

**B. Wakeman's Appeal and Motion to Stay**

On February 18, 2011, Wakeman filed a Notice of Appeal to the Eighth Circuit. [Docket No. 33] On that same day, Wakeman filed a Motion to Stay Judgment Pending Appeal, seeking to suspend this Court's injunction pending appeal of the Court's February 14 Order. [Docket No. 34]

**III. DISCUSSION**

**A. Standard for Granting a Stay Pending Appeal**

Wakeman asks this Court to stay its judgment pending appeal of this Court's Order. A party seeking a stay pending appeal must show that (1) it is likely to succeed on the merits, (2) it will suffer irreparable injury unless the stay is granted, (3) no substantial harm will come to the other interested party, and (4) the stay will not harm the public interest. United States v. Bailey, 556 F. Supp. 2d 977, 981 (D. Minn. 2008) (citing James River Flood Control Ass'n v. Watt, 680 F.2d 543, 544 (8th Cir. 1982)).

**1. Likelihood of Success on the Merits**

Wakeman argues that this Court recognized that the applicability of AAA Rule 46 has not been considered by the Eighth Circuit. Wakeman argues that he is likely to succeed on the merits of his appeal, because he contends that this Court made its decision based on the common law doctrine of *functus officio* as opposed to AAA Rule 46. He contends that AAA Rule 46 only allows an arbitrator to correct a typographical, computational, or clerical error, and the arbitrator did more than that in his November 11 order.

Although Wakeman disagrees, the Court did consider AAA Rule 46 in its order, by stating "AAA Rule 46 essentially codifies the common law doctrine of *functus officio*, which forbids an arbitrator to redetermine an issue which he has already determined." (February 14 Order, 9-10.) Wakeman moves this Court to stay its injunction, in part, because the Eighth Circuit has not previously addressed this question. Wakeman reiterates the arguments that he made to this Court on his motion to vacate; he fails to show that he is likely to be successful on appeal.

### 2. Wakeman's Irreparable Injury

Wakeman by his motion argues that he will suffer irreparable injury if the stay is not granted, because he contends that under the terms of this Court's

injunction he will be forced to close his business and dismiss his employees. Wakeman directs the Court to Cavel Int'l Inc. v. Madigan, 500 F.3d 544 (7th Cir. 2007), to provide the Court an example of a finding that forcing a business to shut down constitutes irreparable harm. The facts in Cavel, however, are distinguishable from the facts of the case at hand. In Cavel, the plaintiff operated a plant which produced horsemeat for human consumption, Illinois passed a law which banned the slaughter of horses for the purpose of human consumption, and the plaintiff challenged the law. 500 F.3d at 545. The plaintiff lost in the district court, appealed, and sought an injunction staying enforcement of the law pending the appeal. Id. The Seventh Circuit granted the injunction, relying heavily on the evidence that failure to grant the injunction would mean that plaintiff would have to permanently close his business. Id. In the case at hand, there is no evidence that Wakeman will not be able to resume his business once the injunction ends.

Additionally, in Cavell the plaintiff was faced with shutting down his business because of a law passed by the State of Illinois. Accordingly, it was not the plaintiff's actions in Cavell which required ceasing operations. In contrast, Wakeman is being forced to cease providing interior reconditioning services

because he has continued operating a business in violation of the Agreement he signed.

The Court does not find that Wakeman would suffer irreparable harm if the stay is not granted. Wakeman has known for over 18 months that he would be required to stop operating his business. He entered into the Agreement which specifically prohibited operating the business he was running after termination of the Agreement. Wakeman cannot now claim irreparable injury where he has chosen to disregard the Agreement he signed, by continuing to operate a business he knew was unauthorized.

### 3. Harm to AutoQual if Injunction Is Stayed

Finally, Wakeman asserts that AutoQual will not suffer harm if the injunction is suspended pending appeal, because AutoQual has made little effort to franchise in Rochester, New York. Wakeman contends that the only matter at stake is whether AutoQual can put another franchise in this location, and the delay of a few months will not substantially harm AutoQual.

One of the reasons AutoQual has not attempted to refranchise in the Rochester area is Wakeman's continued competition. The arbitrator himself

recognized the harm that Wakeman's continued competition has caused AutoQual when he stated:

> [Wakeman] started a new business which completely utilizes and copies the AutoQual business system except for the new name of his company which is successfully making money partly because it no longer has to pay franchise fees to AutoQual. It is hard to imagine a more legitimate business purpose than the facts of this case wherein AutoQual is attempting to protect the wholesale transfer of its business model from an existing franchisee to a new competing business operated by the former franchisee.

(November 2, 2010 Order.) The arbitrator has already determined that AutoQual will suffer irreparable harm from Wakeman's continued operation of his business. The Court agrees with the arbitrator that Wakeman's continued operation of his business will cause AutoQual substantial harm. Accordingly, Wakeman's argument that AutoQual will not suffer any harm if the injunction is stayed is without merit.

### 4. Public Interest

Finally, Wakeman argues that the public interest is in favor of granting the stay, so that the law in this area can be clarified, and to avoid unnecessarily putting people out of work. However, the public interest is served by enforcing a valid restrictive covenant. Zavodnick, 2004 WL 73591, at *7. Thus, staying the injunction will harm the public interest. Id.

Accordingly, based upon the files and records herein, **IT IS HEREBY**

**ORDERED** that:

Petitioner Mark Wakeman's Motion for Immediate Stay of the Court's February 14, 2011 Judgment [Docket No. 34] is **DENIED**.

Date:  May 3, 2011                                        s/ Michael J. Davis
                                                                          Michael J. Davis
                                                                          Chief Judge
                                                                          United States District Court